# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4585 | **DATE** | 7/16/2004 |
| **CASE TITLE** | USA vs. First American Bank | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The parties having entered into a consent order, this matter is hereby dismissed. The Court shall retain jurisdiction for the duration of the consent order to enforce the terms of the order, after which time the case shall be dismissed with prejudice. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Consent Order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JUL 19 2004 | | |
| ✓ | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| MW | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2004 JUL 16 AM 10:56 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | | |

# RECEIVED

JUL 1 3 2004

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **04C 4585** |
|  | ) |  |
| Plaintiff, | ) | CIVIL ACTION NO. |
|  | ) | JUDGE DER-YEGHIAYAN |
| v. | ) |  |
|  | ) |  |
| FIRST AMERICAN BANK, | ) | MAGISTRATE JUDGE |
|  | ) | GERALDINE SOAT BROWN |
| Defendant. | ) |  |

**CONSENT ORDER**   DOCKETED
JUL 1 9 2004

## I.   INTRODUCTION

This Order resolves the claims of the United States that the
defendant, First American Bank (the Bank), has violated the Fair
Housing Act (FHA), 42 U.S.C. §§3601-3619, and the Equal Credit
Opportunity Act (ECOA), 15 U.S.C. §§1691-1691f, by discriminating
on the basis of race, color, and national origin in the extension
of residential real estate-related credit, consumer loans, and
small business loans in the Chicago and Kankakee, Illinois,
metropolitan areas.

The United States contends that the Bank has avoided
marketing itself and doing business in minority census tracts in
the Chicago and Kankakee metropolitan areas because of the race
or national origin of the people residing in those tracts[1] – a

---

[1] For purposes of this Order, minority census tracts are
defined as those which have a 50% or greater minority population,

practice commonly referred to as redlining. According to the Complaint, the Bank's policies and practices have denied an equal opportunity to the residents of minority census tracts, because of the racial and ethnic composition of those tracts, to obtain all types of credit - home mortgage, home equity, auto and other consumer loans, and small business financing.[2]

Under the provisions of this Order, the Bank has committed itself to a program to improve its performance in meeting the credit needs of residents in minority census tracts. The Bank will ensure that its lending products and services are marketed and made available in minority census tracts on no less favorable a basis than in white residential areas. The Bank commits itself to take all reasonable, practicable actions, consistent with

---

with "minority" including all persons who are other than non-Hispanic white. Minority census tracts in the Chicago and Kankakee Metropolitan Statistical Areas (MSAs) are listed by number in Exhibit A hereto, based on 2000 census data. The Chicago MSA is comprised of the following counties: Cook, Lake, McHenry, Kane, DuPage, Grundy, Kendall, DeKalb, and Will. The Kankakee MSA, located immediately south of the Chicago MSA, is comprised of Kankakee County.

[2] In January 2001, the Federal Reserve Board (the Board), then the Bank's regulator, conducted a periodic fair lending examination of the Bank and found reason to believe that the Bank had engaged in a pattern or practice of discrimination on the bases of race and national origin and, in May 2002, referred the matter to the Department of Justice, pursuant to 15 U.S.C. §1691e(g). The Board determined that the Bank redlined minority census tracts in the Chicago and Kankakee, Illinois, metropolitan areas, and engaged in practices which prevented or discouraged the residents of minority census tracts from obtaining equal access to credit because of the race or national origin of the majority of the tract's residents.

2

safety and soundness, to increase the level of residential real estate-related, consumer, and small business lending in minority census tracts. The remedial plan to achieve this objective, detailed in subsequent sections of this Order, includes the opening of new branches in minority census tracts, investment in those areas through subsidized loan offerings, targeted marketing programs, and expanded outreach and education efforts in minority census tracts in order to remedy the effects of the Bank's alleged discriminatory practices in the Chicago and Kankakee metropolitan areas.

First American denies the United States' allegations and maintains that at all times it conducted its lending in compliance with the letter and spirit of fair lending laws and in a non-discriminatory manner.

There has been no factual finding or adjudication with respect to any matter alleged by the United States. Accordingly, the execution of this Order is not, and is not to be considered as, an admission or finding of any violation of the FHA or the ECOA by the Bank. Rather, the parties have entered into this agreed Order to resolve voluntarily the claims asserted by the United States in order to avoid the risks and burdens of litigation.

## II. REMEDIAL ORDER

### A. General Nondiscrimination Injunction

The Bank, including all of its officers, employees, agents, representatives, assignees, and successors in interest, and all those in active concert or participation with any of them, is hereby enjoined from engaging in any act or practice which discriminates on the basis of race, color, or national origin in any aspect of a residential real estate-related transaction, in violation of the Fair Housing Act, 42 U.S.C. §§3604 and 3605, or in any aspect of a credit transaction, in violation of the Equal Credit Opportunity Act, 15 U.S.C. §1691(a)(1). This prohibition includes, but is not limited to, the consideration of race, color, or national origin in: marketing; the selection of sites for and the provision of services at branch offices; the selection of sites for automated teller machines (ATMs), both full-service and cash-dispensing only; the selection of brokers; the definition of an assessment area under the Community Rein-vestment Act; and the determination of geographic areas in which loan applications are solicited or funded, except to remedy the violations alleged by the United States. First American shall take the actions necessary to ensure that the Bank's marketing and solicitation of, and processing of applications for, all forms of financing it offers, provides all persons with an equal opportunity to apply for and obtain such credit, regardless of

4

the race, color, or national origin of any person, the area in which a person lives, or the area in which the property securing the loan or the small business is located. Those actions include, but are not limited to, the remedial actions specified in this Order.

**B. General Principles**

The Bank shall take all reasonable, practicable steps consistent with safety and soundness, including, but not limited to, those specified below, to ensure that all types of credit it offers - home mortgage, home equity, auto and other consumer loans, and small business loan products - are marketed and made available in minority residential areas on no less favorable a basis than in majority white residential areas.

This Order requires the Bank to take these actions to remedy First American's alleged discrimination, and its provisions are meant to ensure that persons throughout the Chicago and Kankakee metropolitan areas will have an equal opportunity to access and obtain credit from the Bank, without regard to (a) their own race or national origin or (b) the racial or ethnic composition of the area in which they reside or their property or small business is located. All provisions of this Order are to be implemented in a manner consistent with the safety and soundness of the Bank.

The parties shall meet and confer at least annually during the term of this Order to evaluate the Bank's progress in

5

accomplishing the actions set out below.  The Bank retains the
discretion to take any other actions it believes are appropriate
to achieve the goals of this Order and shall provide written
notice to the United States thirty (30) days prior to
implementation of any such additional actions.

### C.  Lending Initiatives

### 1.  Additional Branch Locations

The United States recognizes that First American has taken
steps in anticipation of opening four new branch offices located
in minority census tracts.  The Bank has already purchased three
sites in majority African-American census tracts and will open
three new branch offices in majority African-American census
tracts before the end of 2004, subject to obtaining local
government permits and approvals and the approval of the Federal
Deposit Insurance Corporation or other appropriate federal
regulatory agency.  In addition, the Bank has informed the United
States that it has identified one additional site for a new
branch in a majority Hispanic census tract.  The Bank shall open
a branch in a majority Hispanic census tract within three years
of the date of this Order.  If it becomes impracticable to open
the branch in the location identified above within three years of
the date of this Order, the Bank shall immediately inform the
United States upon making this determination and shall present to
the United States a proposal for an alternate new branch in a

majority Hispanic census tract.  In any event, one branch shall
be opened before this decree terminates in a majority Hispanic
census tract.

The four new branches shall provide the full range of
services and hours of operation typically offered at the Bank's
other branches, including, but not limited to, a full range of
residential mortgage, consumer, and small business lending
services as well as full-service ATMs.

Nothing in this Order precludes the Bank from opening or
acquiring additional offices in minority census tracts beyond the
four specified above.  The Bank agrees that it shall continue to
evaluate future expansion opportunities in minority census tracts
in order to fulfill the goals of this Order and shall inform the
United States of the location of any other new branch office
planned or opened in minority census tracts during the term of
this Order as part of its annual report.

### 2.  **Automated Teller Machine (ATM) Locations**

The Bank will continue to deploy deposit-taking ATMs at all
branches as reaffirmed in the Bank's policy adopted by the Board
of Directors on January 27, 2004.  Pursuant to that same policy,
off-premises ATM deployment will continue to be targeted
principally in high rise office buildings or the central business
district of the City of Chicago.  The Bank shall deploy off-
premises deposit taking ATMs in its assessment area on the basis

7

of objective, nondiscriminatory criteria.

## 3. **Staff**

For the duration of this Order, the Bank shall employ a full-time Director of Community Lending (or equivalent title), whose primary responsibilities will include overseeing the development of the Bank's residential, consumer, and small business lending in minority census tracts. The Director will supervise the activities of loan officers regarding the solicitation and origination of residential real estate-related, consumer, and small business loans in minority census tracts, including the special loan programs identified in this Order; coordinate the Bank's involvement in community lending initiatives and outreach programs; serve as a resource to lending staff to encourage the origination of more home mortgage, home equity, consumer, and small business loans within minority census tracts; and report directly to the Bank's senior management on the progress of these initiatives at least quarterly, including recommending changes in these programs to increase their effectiveness.

The Bank shall continue to provide periodic training to all employees and agents with significant involvement in residential real estate-related transactions, and home equity, consumer, and small business lending, to ensure that their activities are conducted in a non-discriminatory manner. This training shall

continue to encompass their fair lending obligations under the
FHA, the ECOA, and the CRA, as well as under this Order.  Such
training shall take place on at least an annual basis, and may be
accomplished by lectures, staff meetings, videotapes, computer-
based programs, regulatory updates, outside speakers, or other
means.  In addition, within thirty (30) days of the entry of this
Order, the Bank shall provide to all such employees an
explanation and copies of the applicable provisions of this
Order, and allow an opportunity for such employees to have any
questions concerning the Order answered.

    4.  **Advertising and Outreach**

    The Bank shall continue and expand its marketing and
outreach program designed to improve its performance in meeting
the credit needs of the residents of minority census tracts in
the Chicago/Kankakee metropolitan areas.  This program shall be
specifically targeted to generate significant additional
applications for all types of its credit products from qualified
residents of and small businesses located in minority census
tracts.  This program shall include, at a minimum, the following
components, although the Bank remains free to undertake on its
own initiative additional marketing and advertising efforts
designed to achieve these goals:

    (a) <u>Print Media.</u>  Subsequent to the Board's 2001 fair
lending examination, the Bank commenced advertising in <u>La Raza</u>,

9

and <u>Hoy!</u>, news publications targeted to Hispanic readers, and in the <u>Chicago Sun-Times</u>, South Zone edition, a general circulation newspaper reaching many African-American readers. During the term of this Order, in addition to any other advertising, the Bank shall continue to advertise in the <u>Chicago Sun-Times</u>, South Zone edition and at least one print medium specifically directed to African-American readers, and one print medium directed to Hispanic readers. These advertisements, viewed in their entirety over the course of a year, shall include the Bank's full range of principal credit products, including any special products or services made available as part of its actions under this Order.[3] The Bank may choose further to expand its targeted advertising by publishing in additional print media directed to African-American, Hispanic, or other minority readers. The Bank retains the discretion to determine the size, content, and frequency of such advertising in order to achieve these goals. In appropriate publications, the text of some of the advertisements shall be in Spanish or other foreign languages commonly used in minority census tracts.

(b) <u>Radio.</u> Subsequent to the Board's 2001 fair lending examination, the Bank commenced advertising on radio station

---

[3] The Bank need not include every credit product it offers in each advertisement, but must include in this advertising over the course of a year the Bank's principal products and all special credit products or programs available under the terms of this Order.

WVAZ, which has programming oriented to African-American listeners. During the term of this Order, the Bank shall place radio advertisements on at least three minority-oriented Chicago-area radio stations, at least one of whose programming is oriented toward African-American listeners and another which is oriented toward Hispanic listeners. The radio advertising, viewed in its entirety over the course of a year, shall include the Bank's full range of principal loan products, including any special products or services made available as part of its actions under this Order. The Bank retains the discretion to determine the content and frequency of such radio spots in order to achieve these goals.

(c) <u>Promotional Materials.</u> The Bank shall create point-of-sale materials, such as posters, on-site illuminated billboards (including Panaflex billboards), and brochures, to advertise products and services it offers, including any special products or services made available as part of its actions under this Order. These materials shall be published in English, Spanish, and other foreign languages commonly used in the minority census tracts. The Bank will place or display these promotional materials in appropriate distribution locations throughout minority census tracts.

(d) In connection with the opening of each of the four new branches discussed in §II.C.1, the Bank may also utilize direct

mailings to advertise the new branch and its loan products to residents and small businesses in the minority census tracts within the neighborhoods surrounding each branch.

(e) The Bank shall spend a minimum of $400,000 on the advertising and marketing campaign described in paragraphs (a), (b), (c), and (d) over the term of this Order.

(f) All of the Bank's print advertising and promotional materials shall contain an equal housing opportunity logotype, slogan, or statement. All of the Bank's radio and television advertisements shall include the audible statement "Equal Opportunity Lender".

## 5. Credit Needs Assessment

On or before the second anniversary of the entry of the Order, First American will undertake actions to assess the Bank's progress in meeting the goals of this Order and other measures the Bank has instituted to meet the credit needs of minority communities in the Chicago and Kankakee MSAs. This assessment shall include: (a) consideration of how the Bank's home mortgage[4], home equity, consumer, and small business lending operations are serving the minority communities of the Chicago and Kankakee MSAs; and (b) a review of the availability of relevant federal, state, and local governmental programs and an

---

[4] The term "home mortgage" in this Order refers to all types of residential credit, including home purchase, refinance, and home improvement loans.

12

evaluation of how the Bank's participation in each of them is assisting or would assist in achieving the goals of this Order.

In accomplishing this assessment, Bank representatives shall meet with representatives of at least four (4) Chicago-area and two (2) Kankakee-area community organizations significantly involved in promoting fair lending and/or home ownership or development in minority census tracts. These meetings shall include consideration of the extent to which the Bank's credit products and services are meeting the credit needs identified by those community organizations and how, if at all, they could be improved. The Bank may also meet with representatives of any other public or private entities it chooses in undertaking this credit needs assessment.

The Bank shall present a written report of this special credit needs assessment to the United States, together with a plan and timetable for any additional actions to be taken, not later than six (6) months after the second anniversary of the entry of this Order.

6. **Consumer Education**

The parties acknowledge that financially educated consumers are an essential component of the Bank's ability to achieve its goal of sustained increases in home mortgage, home equity, consumer, and small business lending in minority census tracts in the Chicago and Kankakee metropolitan areas. To help identify

and develop qualified loan applicants from minority census tracts, the Bank shall invest a minimum of $300,000 over the term of this Order to provide credit counseling, financial literacy, business planning, and other related educational programs targeted at the residents and small businesses of these areas.[5]

The Bank shall allocate a minimum of one-half of the $300,000 to sponsor such programs offered by public-interest or non-profit community organizations. Such programs shall be available in English, Spanish, and other foreign languages commonly used in the minority census tracts.

### 7. Community Reinvestment Act Assessment Area

In March 2001, the Bank revised its CRA assessment area to include all of the Chicago and Kankakee MSAs. The Bank shall continue to include the entirety of those two MSAs in its CRA assessment area. Nothing in this Order precludes the Bank from expanding its CRA assessment area in the future in a manner consistent with the provisions of the CRA and its implementing regulations.

### III. SATISFACTION OF UNITED STATES' CLAIMS FOR MONETARY RELIEF

In addition to the monetary commitments detailed above, the Bank will invest a minimum of $5.0 million over the duration of

---

[5] All the costs associated with the development and implementation of this consumer education initiative, including the expenses of employees engaged in the effort may be included in the calculation of the amount invested by the Bank.

this Order in the special financing program described below for home mortgage, home equity, CRA small business, community development, and consumer lending.[6] When combined with the other financial commitments described herein, this special lending program will satisfy fully the claims of the United States for damages and other monetary relief in this case.

Through this special financing program for these categories of loans, the Bank will offer qualified residents of (for home mortgage, home equity, and consumer loans), and businesses (for CRA small business loans and community development loans[7]) located in minority census tracts, loan products at interest rates that are more advantageous to the applicant than normally would be provided. The Bank will subsidize each such transaction by means of offering an interest rate below that which the Bank would normally charge. In operating this special financing program, the Bank shall exercise

---

[6] With respect to the Bank's home mortgage subsidy program, no loan originated under this program shall exceed the conforming loan limit applicable to Fannie Mae and Freddie Mac, as determined annually by the Federal Housing Finance Board (currently $333,700).

[7] In this Order, community development loans are defined as those which meet the definition set forth in Federal Reserve Board Regulation BB, 12 CFR 228.12(h)(3): "activities that promote economic development by financing businesses or farms that meet the size eligibility standards of the Small Business Administration's Development Company or Small Business Investment Company programs (13 CFR 121.301) or have gross annual revenues of $1 million or less."

its underwriting discretion in a manner which maximizes the likelihood that it will originate a loan to a qualified applicant, consistent with applicable underwriting guidelines and safety and soundness standards.

First American shall provide to any applicant qualified for a particular loan product an interest rate of a minimum of ½ of a percentage point (50 basis points) below the standard interest rate then set by the Bank for that product.[8]

The Bank shall have discretion to provide the loan subsidy among its various loan products specified in this Order; however, the Bank shall use its best efforts to implement its subsidy program in a manner such that, of the total dollar volume of loans each year subsidized by this special program, 30% are CRA small business loans and community development loans.

If the Bank reaches a $1.0 million investment level before the end of any one-year period for the loan subsidy program, it may, in its discretion: (a) withhold any additional funding for the special financing program for the remainder of that period;

---

[8] For purposes of this Order, the loan subsidy amount calculation will be the reduction in the monthly payment from the standard monthly payment based on the borrower's qualifications which result from the interest rate reduction the borrower receives (amortized over the full term of the loan) times the number of monthly payments for the time periods as set forth below for various loan types:
(a) First mortgages at 7.5 years;
(b) Home equity loans and lines of credit at 5 years; and,
(c) Small business and community development loans at the term of the note (generally 1 to 5 years).

16

or (b) consistent with safety and soundness considerations, exceed that figure for the year. If the Bank exceeds a $1.0 million investment level for any one-year period, the surplus shall be credited toward its commitment for the following years. If the Bank does not invest $1.0 million in this program in any one-year period, the shortfall shall be added to its commitment for the following years. If, at the end of five (5) years, the Bank has not expended the full amount of its $5.0 million commitment, it shall extend this special financing program until it has expended the full amount.

Although any resident of, or any business located in, any of the minority census tracts may be eligible for assistance under this special financing program, the Bank shall take appropriate steps to promote an equitable distribution of these investment funds widely among minority census tracts. This discretion includes the authority to designate a certain amount of this funding at any time for residents of certain tracts within the entire area in order to prevent a disproportionate concentration of the Bank's investment under this program in a relatively small geographic area.

No provision of this Order, including this special financing program commitment, requires the Bank to make any unsafe or un-sound loan. During the term of this Order, the Bank shall assess the effectiveness of this special financing program in achieving

its goal and shall recommend to the United States changes
necessary and appropriate to increase its effectiveness.

## IV. EVALUATING AND MONITORING COMPLIANCE

For the duration of this Order, First American shall retain
all records relating to its obligations hereunder, including its
home mortgage, home equity, consumer, small business, and
community development lending activities, as well as its
advertising, outreach, branching, special programs, and other
compliance activities as set forth herein. The United States
shall have the right to review and copy such records upon
request. This Order shall not be interpreted to require the Bank
to deviate from its ordinary document retention procedures with
respect to its business activities in areas other than those
related to its obligations under this Order.

The Bank shall annually provide to counsel for the United
States the data it submits to the Federal Financial Institutions
Examination Council (FFIEC) pursuant to the Home Mortgage
Disclosure Act and the Community Reinvestment Act. The data will
be provided in the same format in which it is presented to the
FFIEC within thirty (30) days of its submission to the FFIEC each
year for the duration of this Order.

In addition to the submission of any other plans or reports
specified in this Order, the Bank shall make an annual report to
the United States on its progress in fulfilling the goals of this

18

Order.  Each such report shall provide a complete account of the
Bank's actions to comply with each requirement of this Order
during the previous year, an objective assessment of the extent
to which each quantifiable obligation was met, an explanation of
why any particular component fell short of meeting its goal for
that year, and any recommendations for additional actions to
achieve the goals of this Order.  The Bank shall submit this
report each year for the term of this Order within forty-five
(45) days of the anniversary of the date of the entry of this
Order.  In addition, the Bank shall attach to the annual reports
representative copies of training material and advertising and
marketing materials disseminated pursuant to this Order.

## V.  ADMINISTRATION

This Order shall be binding on the Bank, and all of its
officers, employees, agents, representatives, assignees,
subsidiaries, and successors in interest.

This Order shall terminate (a) three months after the
submission of the Bank's fifth annual report to the United
States; (b) if the Court grants a joint motion by the parties to
terminate the Order prior to that date, which motion may be
proposed by First American at any time after the Order has been
in effect for four years, if the Bank has fully complied with all

its terms[9]; or (c) if the Bank has not invested $5.0 million in its special financing program in five (5) years from the date of entry of this Order, three months after the submission of the Bank's final annual report to the United States. It shall only be extended upon written agreement of the parties or, upon motion of the United States to the Court, for good cause shown.

This Order may be modified at any time, upon approval of the Court, by written agreement of the Bank and the United States. The parties recognize that there may be changes in relevant and material factual circumstances during the term of this Order which may impact the accomplishment of its goals. The parties agree to work cooperatively to discuss any proposed modifications to this Order.

In the event that any disputes arise concerning the interpretation of or compliance with the terms of this Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution. The United States agrees that if it reasonably believes that the Bank has violated any provision of this Order, it will provide the Bank written notice thereof and give it thirty (30) days to resolve the alleged violation before presenting the matter to this Court. In the event of either a

---

[9] The United States shall not refuse to join the Bank's motion if it concludes that the Bank has fully complied with all the provisions of this Order.

failure by the Bank to perform in a timely manner any act required by this Order or an act by the Bank in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity.

The Bank's compliance with the terms of this Order shall fully and finally resolve all claims of the United States relating to the Bank's alleged violation of the fair lending laws by means of discriminating on the basis of race, color, or national origin, including all claims for equitable relief and monetary damages and penalties. Each party to this Consent Order shall bear its own costs and attorney's fees associated with this litigation.

The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice.

SO ORDERED, this _16th_ day of ___July___, 2004.

UNITED STATES DISTRICT JUDGE
**Samuel Der-Yeghiayan**

The undersigned hereby apply for and consent to the entry of this Order:

For First American Bank:

Andrew L. Sandler, Esq.
Benjamin B. Klubes, Esq.
Skadden, Arps, Slate, Meagher
    & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202)371-7000
Fax: (202)393-5760

Jonathan S. Feld, Esq.
KMZ Rosenman
Suite 1600
525 West Monroe Street
Chicago, IL 60661-3693
Tel: (312)902-5200
Fax: (312)902-2050

For the United States:

R. Alexander Acosta
Assistant Attorney General

Steven H. Rosenbaum
Chief

Donna M. Murphy
Deputy Chief

Valerie R. O'Brian
Burtis M. Dougherty
Attorneys
Housing and Civil
    Enforcement Section - NWB
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Tel: (202)514-4751
Fax: (202)514-1116

Patrick J. Fitzgerald
United States Attorney

Joan Laser
Assistant U.S. Attorney
219 South Dearborn Street
Chicago, Illinois 60604
Tel: (312)353-1857
Fax: (312)886-4073

# See Case File for Exhibits